**IMAGE AND SOUND SERVICE CORPO- RATION and Image and Sound Service of New England, Inc., Plaintiffs,**

v.

**ALTEC SERVICE CORPORATION and National-Simplex-Bludworth, Inc., Defendants.**

**Civ. A. No. 54–811.**

United States District Court
D. Massachusetts.

Dec. 28, 1956.

Malloy, Sullivan & Myerson, Boston, Mass., for plaintiffs.

Ropes, Gray, Best, Coolidge & Rugg, Frank W. Crocker, Warren F. Farr, Boston, Mass., for defendant Altec Service Corp.

Bingham, Dana & Gould, Sumner H. Babcock, Joseph Ford and Neil Leonard, Boston, Mass., for Nat.-Simplex-Bludworth, Inc.

SWEENEY, Chief Judge.

The plaintiffs, Image and Sound Service Corporation, a Delaware Corporation, and Image and Sound Service Corporation of New England, incorporated in Massachusetts, have brought this action under Sections 4 and 16 of the Clayton Act, 15 U.S.C.A. §§ 15, 26, to recover treble damages for alleged violations by the defendants, Altec Service Corporation and National-Simplex-Bludworth, Inc., of Sections 1 and 2 of the Sherman Act, 15 U.S.C.A. §§ 1, 2. The case is before me now on a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure, 28 U.S.C.A., by both defendants against both plaintiffs.

The uncontroverted facts with respect to the Delaware plaintiff are as follows: The corporation was formed in 1949 by Lawrence J. Hacking, who until that time, had been the New England district manager of the defendant Altec. It was capitalized at $20,000 which Hacking and three associates invested, each contributing $5,000. No further capital was ever invested and no income was ever received. The plan was for the plaintiff to offer to sound service engineers territorial franchises under the plaintiff's sponsorship, and the resulting local sound service companies were then to do the actual installation and servicing of the equipment. However, the entire activities of this plaintiff consisted of sending night letters to two hundred engineers seeking to interest them in becoming franchise holders, opening a small office in New York, and advertising in several trade journals. All of these solicitations were completely unsuccessful and the new corporation never obtained a single franchise holder or serv-

ice contract from any exhibitor. Approximately $5,000 remaining of the original investment were turned over to the Massachusetts plaintiff in 1950 and since then the Delaware corporation has been totally inactive.

Section 4 of the Clayton Act gives a right of recovery to "any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws * * *." The result in this case hinges on the interpretation of "business and property" and I hold that the instant situation is not included in that phrase.

 The testimony of Lawrence J. Hacking on depositions and the certificates of the Honorable John N. McDowell, Secretary of State of Delaware, show conclusively that the plaintiff never had any interest in the subject matter protected by Section 4 of the Clayton Act. The word "business" in this section is to be used in its ordinary sense with its usual connotation, a commercial or industrial enterprise or establishment. Roseland v. Phister Manufacturing Company, 7 Cir., 125 F.2d 417. There was no injury to the plaintiff's business or property here since he had nothing beyond a hope or expectation and no contract was ever entered into or franchise issued. Moreover, the "right which [the antitrust laws] give to a person to recover three-fold the damages he has sustained, is an unusual one, the remedy is drastic, and the Acts are to be strictly construed and not to be enlarged by construction." Westor Theatres v. Warner Bros. Pictures, D.C., 41 F.Supp. 757, 762.

Most similar to this case factually is Peller v. International Boxing Club, D.C., 135 F.Supp. 942, affirmed, 7 Cir., 227 F.2d 593, 596, which held that the plaintiff could not recover under the Clayton Act on the ground that he was never engaged in the business of boxing promoter or that he intended to become so engaged. Nevertheless, the plaintiff in that case had been in the process of negotiating contracts with boxers and their managers and had made arrangements for sponsorship and financing of a boxing match, and none of these activities were held to be enough to bring the plaintiff within the protection of the Clayton Act. "The construction most favorable to him which can be placed on his testimony is that he entered into a series of separate negotiations which might have ripened into advantageous agreements under which the proposed fight could have taken place." The court concluded, 227 F.2d at page 596, that even assuming the truth of the allegations as to the defendants' illegal acts and their effect on the negotiations, "he was not injured within the contemplation of the statutory provisions, inasmuch as no property rights could accrue to him in the premises until and unless he succeeded in obtaining the several contractual relationships for which he was negotiating." This language clearly covers the instant case. See also Brownlee v. Malco Theatres, Inc., D.C., 99 F.Supp. 312; Triangle Conduit & Cable Co. v. National Electric Products Corporation, 3 Cir., 152 F.2d 398, 399, in both of which the court denied recovery because the plaintiff had no "business or property." William Goldman Theatres, Inc., v. Loew's, Inc., 3 Cir., 150 F.2d 738, on remand, D.C., 69 F.Supp. 103, affirmed, 3 Cir., 164 F.2d 1021, certiorari denied 334 U.S. 811, 68 S.Ct. 1016, 92 L. Ed. 1742; Vines v. General Outdoor Advertising Co., Inc., 2 Cir., 171 F.2d 487, and Turner v. United States Gypsum Co., D.C., 11 F.R.D. 545, are not in point as in all three cases the plaintiff had been engaged in a business and the alleged injury was to a going concern.

 Furthermore, a private plaintiff, in contradistinction to the government, must in a suit under the anti-trust laws be subject to measurable damages. Camfield Manufacturing Co. v. McGraw Electric Co., D.C., 70 F.Supp. 477. While recovery will not be denied merely because it may be difficult for the plaintiff to prove damages, Bigelow v. RKO Radio Pictures, 327 U.S. 251, 66 S.Ct. 574, 90 L.Ed. 652, there must nevertheless be some basis for computing the amount of damages which the plaintiff claims to

have sustained. He cannot recover on the strength only of his allegations of hypothetical losses of speculative and anticipatory earnings in a projected enterprise that never materialized. Central Coal & Coke Co. v. Hartman, 8 Cir., 111 F. 96; American Banana Co. v. United Fruit Co., 160 F. 184, affirmed, 2 Cir., 166 F. 261, affirmed 213 U.S. 347, 29 S.Ct. 511, 53 L.Ed. 826.

Accordingly the defendants' motion for summary judgment is granted as against Image and Sound Service Corporation.

■ The other plaintiff, Image and Sound Service Corporation of New England, has since its incorporation been engaged in installing and servicing sound systems in this area. As to this plaintiff, the defendants claim to be entitled to summary judgment on the ground that the institution of this action was never authorized by the corporation. With this contention I cannot agree.

The suit was brought by Lawrence J. Hacking on behalf of the corporation. Mr. Hacking is, according to his affidavit filed in opposition to this motion, one of the directors of this company, as well as its treasurer and general managing agent, and in the last named capacity he has under Massachusetts law the power to institute actions in the name of the corporation. Frost v. Domestic Sewing Machine Co., 133 Mass. 563; Trustees of Smith Charities v. Connolly, 157 Mass. 272, 31 N.E. 1058; Lydia E. Pinkham Medicine Co. v. Gove, 298 Mass. 53, 9 N.E.2d 573. Fletcher on Corporations (1931) Volume 9, Section 4216, cited in part by the defendants, has stated the general rule as follows: .

"Suits by corporations must be instituted and defenses made, as other acts by the corporations must be done, by proper authority. The proper persons to authorize the commencement of a suit or the interposition of a defense on behalf of a corporation are primarily the directors, *but the power may be vested in the president or other managing officer."*

It is furthermore apparent from the minutes of the special Board of Directors meeting of April 4, 1955, that even Hacking's action as a director was ratified by the whole Board which gave him full authority to settle this suit.

This brings me to the defendants' second contention, that all causes of action accruing after January 1, 1950, and prior to October 14, 1952, are barred by the statute of limitations.

■ Since the complaint charges the defendants with a continuous series of violations, a cause of action for each invasion of the plaintiff's interest arose at the time of that invasion, and the applicable statute of limitations runs from that time. Momand v. Universal Film Exchanges, D.C., 43 F.Supp. 996, affirmed, 1 Cir., 172 F.2d 37, certiorari denied 336 U.S. 967, 69 S.Ct. 939, 93 L. Ed. 1118.

■ The recently enacted federal statute of limitations, 15 U.S.C.A. § 15b, does not govern this suit which was instituted nearly three years prior to the effective date of the new statute. Under the rule set out in the Momand case, supra, Chattanooga Foundry & Pipe Works v. City of Atlanta, 203 U.S. 390, 27 S.Ct. 65, 51 L.Ed. 241, and Cope v. Anderson, 331 U.S. 461, 67 S.Ct. 1340, 91 L.Ed. 1602, the applicable statute is that of the state in which the suit was brought and is that applying to tort actions.

■ The Massachusetts six year statute, G.L.(Ter.Ed.) Chapter 260, Section 2, was amended in 1948 reducing the period of limitations in tort actions to two years, this amendment to take effect January 1, 1950. The result of this new Section 2A is to bar any causes of action accruing between January 1, 1950, and October 14, 1952, the latter date being two years prior to the institution of this suit. The plaintiff is still free to prove damages from any injury which may have been inflicted to his business during the periods between the date of incorporation and January 1, 1950, and October 14, 1952, to date.

In conclusion, the defendants' motion for summary judgment is granted against Image and Sound Service Corporation. As against Image and Sound Service Corporation of New England, the motion is allowed with respect to any causes of action which may have accrued between January 1, 1950, and October 14, 1952.