**FIRST DELAWARE VALLEY CITIZENS TELEVISION, INC.**

**v.**

**CBS, INC. and WHP, Inc.**

**Civ. A. No. 75–1152.**

United States District Court,
E. D. Pennsylvania.

July 1, 1975.

Stuart H. Savett, Donald L. Weinberg, Harold E. Kohn, P. A., Philadelphia, Pa., for plaintiff, First Delaware Valley Citizens Tel., Inc.

J. Roger Wollenberg, Timothy N. Black, Wilmer, Cutler & Pickering, Washington, D. C. (Benjamin M. Quigg, Jr., Stephen W. Armstrong, Morgan, Lewis & Bockius, Philadelphia, Pa., of counsel), for defendant, CBS, Inc.

Max L. Lieberman, Pelino, Wasserstrom, Chucas & Monteverde, Philadelphia, Pa. (Daniel M. Redmond, Richard D. Marks, Dow, Lohnes & Albertson, Washington, D. C., of counsel), for defendant, WHP, Inc.

## MEMORANDUM

GORBEY, District Judge.

The defendant, WHP, Inc., pursuant to Rule 12 of the Federal Rules of Civil Procedure has moved the court to dismiss this action with prejudice or, alternatively, to dismiss without prejudice to its reinstitution upon the final conclusion of the proceedings now pending before the Federal Communications Commission and which involves the other defendant, CBS, Inc., relying upon the doctrine of primary jurisdiction.

In support of the motion to dismiss with prejudice, defendant refers to the complaint pointing out that in the first of the three major allegations to support the alleged antitrust violations, defendant CBS only is involved; in the second, both defendants; and in the third, only CBS. Defendant then proceeds to analyze and discuss each allegation separately and having concluded that none of them is actionable under the antitrust laws, further concludes that as a consequence an alleged conspiracy pursuant to which the overt acts were committed, states no cause of action. Such is a non sequitur. The obvious purpose of this approach to the problem is to avoid the impact of innumerable decisions in the antitrust field which have established the rule that overt acts in furtherance of a conspiracy

need not themselves be unlawful, a principle equally applicable in a criminal prosecution for conspiracy, because "the function of the overt act . . . is simply to manifest 'that the conspiracy is at work', . . .". *Yates v. United States*, 354 U.S. 298, 334, 77 S.Ct. 1064, 1085, 1 L.Ed.2d 1356 (1957). The same idea was expressed in a private treble damage antitrust action in which the court stated:

". . . It would be reversible error to instruct the jury that particular acts, alleged to be part of a conspiracy, were lawful, without adding the express qualification 'in the absence of conspiracy'." *Lessig v. Tidewater Oil Company*, 327 F.2d 459, 466 (9th Cir. 1964), *cert. denied*, 377 U.S. 993, 84 S.Ct. 1920, 12 L.Ed.2d 1046 (1964).

Also, intent to monopolize renders unlawful a dominant or exclusive market position which is itself lawful. *United States v. Grinnell Corporation*, 384 U.S. 563, 86 S.Ct. 1698, 16 L.Ed.2d 778 (1966).

"There are two essential elements to any Section 1 offense: (1) a contract, combination or conspiracy, resulting in (2) an unreasonable restraint of trade. The second element may be established by proof that the contract, combination or conspiracy was of a type the law finds to be inherently unreasonable (per se violations), *or it may rest upon a showing of anticompetitive motive or effect in the particular case.*" (Emphasis added)

"Section 1 of the Sherman Act is not concerned with individual conduct, no matter how anticompetitive. It requires some sort of deliberately coordinated or agreed upon behavior, though this need not take the form of an explicit, formalized agreement. It is enough that the plaintiff establish 'a unity of purpose or a common design and understanding, or a meeting of minds in an unlawful arrangement'." *Overseas Motors, Inc. v. Import Motors Limited, Inc.*, 375 F.Supp. 499 at 531 (E.D.Mich., S.D.1974).

"Once the conspiracy is established, each conspirator is 'treated as if he had authorized each of his co-conspirators to do all things which further the conspiracy. This applies as well to verbal as to non-verbal conduct, to both non-assertive and assertive declarations . . .'". *Id.* at 538.

All objections raised by WHP, Inc. must be considered as they relate to plaintiff's contention that a conspiracy existed the purpose of which is to injure and eliminate by unfair means, the plaintiff as a business competitor of the defendant CBS, Inc. thus giving the latter a monopoly position in its quest for the economic gains to be achieved from an interstate business as a consequence of having a license to broadcast on Channel 10.

With respect to plaintiff's complaint we may say, as did Mr. Justice Holmes with respect to the bill in equity in a leading antitrust case, *Swift & Co. v. United States*, 196 U.S. 375, 395, 25 S. Ct. 276, 279, 49 L.Ed. 518 (1905):

". . . it is to be taken to mean what it fairly conveys to a dispassionate reader by a fairly exact use of English speech. Thus read this bill (complaint) seems to us intended to allege successive elements of a single connected scheme."

\* \* \* \* \* \*

"The scheme as a whole seems to us to be within reach of the law. The constituent elements, as we have stated them, are enough to give to the scheme a body and, for all that we can say, to accomplish it. Moreover, whatever we may think of them separately, when we take them up as distinct charges, they are alleged sufficiently as elements of the scheme. It is suggested that the several acts charged are lawful, and that intent can make no difference. But they are bound together as the parts of a single plan. The plan may make the parts unlawful . . . The unity of the plan embraces all the parts." *Id.* at 396, 25 S.Ct. at 279.

Thus,

".  .  . it is well settled that acts which are in themselves legal lose that character when they become constitutent elements of an unlawful scheme. *Swift & Co. v. United States*, 196 U.S. 375, 396, 25 S.Ct. 276, 279, 49 L.Ed. 518; *American Tobacco Co. v. United States*, 328 U.S. 781, 809, 66 S.Ct. 1125, 1138, 90 L.Ed. 1575; *Steele v. Bulova Watch Co.*, 344 U.S. 280, 287, 73 S.Ct. 252, 256, 97 L.Ed. 252. See *Georgia v. Pennsylvania R. Co.*, 324 U.S. 439, 457–458, 65 S.Ct. 716, 726, 89 L.Ed. 1051; *Slick Airways v. American Airlines*, 107 F.Supp. 199, 207 (D.C.N.J.)." *Continental Ore Co. v. Union Carbide & Carbon Corp.*, 370 U.S. 690 at 707, 82 S.Ct. 1404 at 1415, 8 L.Ed.2d 777 (1960).

Stated differently:

"It is not the form of the combination or the particular means used but the result to be achieved that the statute condemns. It is not of importance whether the means used to accomplish the unlawful objective are in themselves lawful or unlawful. Acts done to give effect to the conspiracy may be in themselves wholly innocent acts. Yet, if they are part of the sum of the acts which are relied upon to effectuate the conspiracy which the statute forbids, they come within its prohibition  .  .  ." *American Tobacco Co. v. United States,* 328 U.S. 781, 809, 66 S.Ct. 1125, 1139, 90 L.Ed. 1575 (1946).

All of which means that:

" '(T)he character and effect of a conspiracy are not to be judged by dismembering it and viewing its separate parts, but only by looking at it as a whole  .  .  .' " *Continental Ore Co. v. Union Carbide & Carbon Corp., supra,* 370 U.S. at 699, 82 S.Ct. at 1410.

It follows therefore, that in this action the totality of the conduct of both defendants is subject to judicial scrutiny, " '.  .  . and in a case like the one before us, the duty of the jury (court) was (is) to look at the whole picture and not merely at the individual figures in it' ". *Id.* at 699, 82 S.Ct. at 1410.

The granting of the motion to dismiss with prejudice at this stage of the proceedings and without the benefit of that which may be obtained as a result of discovery would not be justified and would also be in disregard of the significant fact that in this case plaintiff is acting as a private attorney-general, litigating issues in which there is a public as well as a private interest. *See e. g., American Safety Equipment Co. v. J. P. Maguire & Co.,* 391 F.2d 821, 826 (2d Cir. 1968). For, in the words of the court in the *Overseas Motors, Inc.* case, *supra,* at 520:

"As with any other litigant, the public is entitled to a 'full and fair day in court' ".

This becomes particularly significant since with statutory exceptions "claims arising under the antitrust laws are within the exclusive jurisdiction of the federal courts", *Id.* at page 518. *See General Investment Co. v. Lake Shore & Mich. So. Ry.,* 260 U.S. 261, 287, 43 S. Ct. 106, 67 L.Ed. 244 (1922).

◼ Contention that primary jurisdiction is in the Federal Communications Commission is denied for the reasons given in the court's memorandum in support of its order denying a similar motion to dismiss on behalf of the other defendant CBS. We find nothing in the recent case, *Nader v. Allegheny Airlines Inc.,* 512 F.2d 527 (C.A.D.C.1975) that requires a different conclusion. There the court stated:

"Primary jurisdiction recognizes that even though a claim may be cognizable in the courts, technical questions often call for the judgment of an agency presumably expert in the field under judicial consideration. Perhaps more importantly, where Congress has entrusted the regulation of an industry to a single regulatory body, uniformity of policy and practice can only be

achieved by submitting relevant issues to the affected agency for consideration." *Id.* at page 544.

In the case *sub judice* technical questions which call for the judgment of an agency presumably expert, are not under judicial consideration. Those questions are presently before the FCC, and its determination, one way or another, has nothing to do with the resolution of the issue before this court, *i. e.* whether defendants CBS, Inc. and WHP, Inc. have violated the antitrust laws, a decision not within the authority of the FCC and the resolution of which in this court requires no assistance from any FCC proceedings including the pending one.

■ The argument of defendant WHP, Inc. in support of its motion to dismiss, that little monetary damage would be sustained even if plaintiff's allegations were true, therefore no antitrust violation would result, has no merit. *Zenith Radio Corp. v. Hazeltine Research, Inc.,* 395 U.S. 100, 89 S.Ct. 1562, 23 L.Ed.2d 129 (1969). In a private antitrust suit a plaintiff must establish three elements, last of which is damage to him resulting from the violation of the antitrust laws. *Simpson v. Union Oil Co. of Cal.,* 311 F.2d 764 (9th Cir. 1963); *Elderbeerman Stores Corp. v. Federated Department Stores, Inc.,* 459 F.2d 138 (6th Cir. 1972). Plaintiff has alleged injury as a result of the alleged concerted action of defendants; plaintiff is entitled to present evidence to support its allegation. Even then all that is required is the proof that there was "some damage flowing from the unlawful conspiracy; inquiring beyond this minimum point goes only to the amount and not the fact of damage." *Zenith Radio Corp. v. Hazeltine Research Inc., supra,* 395 U.S. at page 114, Note 9, 89 S.Ct. at page 1571. *See also Hackett v. General Host Corp.,* 455 F.2d 218, *cert denied,* 407 U.S. 925, 92 S.Ct. 2460, 32 L.Ed.2d 812 (1972); *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 94 S. Ct. 2140, 40 L.Ed.2d 732 (1974).

In addition to the allegation of damage, plaintiff seeks equitable relief under § 16 of the Clayton Act (15 U.S.C. § 26), the nature and extent of which will depend upon the facts as they are now, and as they may be developed in the future progress of this litigation.

■ A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. In a leading case the Supreme Court of the United States wrote:

"When a Federal Court reviews the sufficiency of a complaint, before the reception of any evidence either by affidavit or admissions, its task is necessarily a limited one. *The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.* Indeed it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test. Moreover it is well-established that, in passing on a motion to dismiss, whether on the ground of lack of jurisdiction over the subject matter or for failure to state a cause of action, the allegations of the complaint should be construed favorably to the pleader." (Emphasis added)

*Scheur v. Rhoades,* 416 U.S. 232, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974).

■ Finally, defendant's objection to the sufficiency of the complaint because no allegation of "public injury" was made, is without merit because, where, as here, per se violations of Section 1 are alleged, there is no necessity to allege or prove "public injury". *Klor's, Inc. v. Broadway-Hale Stores, Inc.,* 359 U.S. 207, 79 S.Ct. 705, 3 L.Ed.2d 741 (1959); *Syracuse Broadcasting Corporation v. Newhouse,* 295 F.2d 269 (2d Cir. 1961); *Allied Electric Supply Company v. Motorola, Inc.,* 369 F.Supp. 133 (W.D.Pa.1973).

■■ The fact that plaintiff is not presently engaged in the broadcasting

business but is a potential licensee, does not mean that it is not entitled to relief, if its allegations can be sustained. There is ample precedent to the effect that the antitrust laws afford protection to "would be" competitors just as they do to "actual" competitors. *Triangle Conduit & Cable Co. v. National Electric Products Corp.*, 152 F.2d 398 (3d Cir. 1945); *Martin v. Phillips Petroleum Co.*, 365 F.2d 629 (5th Cir. 1966), *cert. denied*, 385 U.S. 991, 87 S.Ct. 600, 17 L. Ed.2d 451 (1967); *Woods Exploration & Pro. Co. v. Aluminum Co. of Amer.*, 438 F.2d 1286 (5th Cir. 1971); *Denver Petroleum Corporation v. Shell Oil Company*, 306 F.Supp. 289 (D.Colo.1969).

It follows therefore that the motion of defendant WHP, Inc. to dismiss the complaint must be denied.